IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| ROY MILLER III,<br>3654 Highland Glen Way<br>Jacksonville, Florida 32224<br><br>      Plaintiff,<br><br>vs.<br><br>NFL PLAYER DISABILITY AND<br>NEUROCOGNITIVE BENEFIT PLAN,<br>200 St. Paul Street, Suite 2420<br>Baltimore, Maryland 21202<br><br>and<br><br>DISABILITY BOARD OF THE NFL<br>PLAYER DISABILITY AND<br>NEUROCOGNITIVE BENEFIT PLAN,<br>200 St. Paul Street, Suite 2420<br>Baltimore, Maryland 21202<br><br>      Defendants. | Civil Action No. __22-1403__<br><br>**COMPLAINT (ERISA)** |

**JURISDICTION**

1. Plaintiff Roy Miller III brings this action for monetary and equitable relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Mr. Miller's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

2. Venue lies in the District of Maryland pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant NFL Player Disability and Neurocognitve

Benefit Plan ("Plan") is administered in part in this District, the breaches alleged took place in this District, and the Plan may be found in this District.

## PARTIES

3. At all relevant times, Mr. Miller has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Mr. Miller resides in Jacksonville, Florida.

4. At all relevant times, the Defendant Plan has been an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), established and maintained for the benefit of the employees of member teams of the National Football League ("NFL"). The Plan is named herein as a necessary party for the relief requested.

5. Defendant Disability Board of the NFL Player Disability and Neurocognitive Benefit Plan ("Board") is the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). The Board is the named fiduciary of the Plan within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2), charged with fiduciary duties including the duty to administer the Plan solely in the interest of the Plan's participants and strictly in accordance with the Plan's written terms. ERISA § 404(a), 29 U.S.C. § 1104(a).

## FACTS

### Mr. Miller's NFL Career

6. Mr. Miller is a former professional football player in the NFL. After graduating from the University of Texas, he played defensive tackle for the Tampa Bay Buccaneers, Jacksonville Jaguars, and Kansas City Chiefs during a nine-season career from 2009 through 2017.

7. Defensive tackle is a physically punishing position that requires the player to

endure high-impact contact with offensive players on every play.

8. In his first season with the Buccaneers, Mr. Miller played in 15 out of 16 games, starting in one game and finishing the season with 33 tackles and two sacks, meaning that he tackled the opposing quarterback before the quarterback could throw a pass. In 2010, he started in all 16 games and had 48 tackles and one sack. In 2011, despite injuries, he played every one of the 16 regular season games, started in three, and had 36 tackles. In 2012, he played in 15 games and had 24 tackles.

9. Between signing with the Jaguars in 2013 and an injury in October 2016, Mr. Miller started in 50 out of a possible 54 games. During this time, he was credited with 106 tackles with five sacks.

10. While playing football in the NFL, Mr. Miller suffered numerous orthopedic and neurological injuries, including multiple concussions and countless subconcussive impacts, multiple herniated discs, and damage to his shoulders, hips, knees, and ankles. He underwent multiple surgeries on his shoulders, left knee, and right Achilles tendon.

11. In October 2016, Mr. Miller tore his right Achilles tendon during the Jaguars' sixth game of the season. Following surgeries in October and November 2016, Mr. Miller was placed on the injured reserve list for the remainder of the season.

12. In 2017, Mr. Miller signed with the Chiefs and played in seven games. However, his psychiatric and cognitive issues stemming from his multiple football injuries during the preceding eight seasons became severe.

13. In November 2017 and again in June 2018, Mr. Miller attended an intensive outpatient program for psychiatric issues. At the time of his admission in November 2017, a

psychiatric evaluation noted that he exhibited symptoms "secondary to significant encephalopathy secondary to CTE" or chronic traumatic encephalopathy, a chronic degenerative brain disease found in athletes who have a history of repetitive brain trauma.

14. In July 2018, due to his continuing and severe health conditions, Mr. Miller announced his retirement from the NFL.

15. In May 2019, an independent psychiatric evaluation concluded that "Traumatic Brain Injury - Post concussion syndrome" appeared to be "the major contributing cause of the psychiatric diagnosis (anxiety, panic attacks, anger, depression, insomnia) and the need for psychiatric treatment." The evaluation also connected Mr. Miller's psychiatric symptoms to his chronic pain from his football injuries, noting that Mr. Miller's prognosis was "poor & guarded" because "[t]he worst psychological outcome is seen in patients who are in chronic pain."

16. Since his retirement, Mr. Miller has undergone two spinal surgeries and is now preparing for a spinal fusion in an effort to alleviate his chronic pain. Mr. Miller also suffers from chronic migraine headaches.

**Pertinent Plan Terms**

17. The Plan provides "total and permanent" disability benefits to NFL players under the following circumstances:

>    (a)   At least one "Plan neutral physician" selected by the Board or by the Plan's Disability Initial Claims Committee finds that (i) the player is substantially unable to engage in any occupation or employment for remuneration or profit, and (ii) this condition is permanent; and
>
>    (b)   The Disability Initial Claims Committee or the Board agrees with the Plan

neutral physician's finding of permanent disability.

18. It is undisputed that Mr. Miller meets these criteria for total and permanent disability.

19. Total and permanent disability benefits under the Plan are divided into four classifications, of which three are relevant here: Active Football, Active Nonfootball, and Inactive A.

20. Active Football benefits are payable if (a) the player's disability arises out of NFL football activities while he is an Active Player, and causes him to be totally and permanently disabled; and (b) his application for benefits is received by the Plan within 18 months after the player ceases to be an Active Player.

21. If the player's total and permanent disability is due to a "psychological/psychiatric disorder," the Active Football classification additionally requires that the disorder be either (a) caused by or related to a head injury or injuries sustained by the player arising out of NFL football activities, such as repetitive concussions; or (b) caused by or related to the use of a substance prescribed by a licensed physician for an injury or injuries or illness sustained by the player and arising out of NFL football activities; or (c) caused by an injury or injuries that qualifies the player for the Active Football classification.

22. Active Nonfootball benefits are payable if (a) the player's disability does not arise out of NFL football activities but does arise while he is an Active Player; and (b) his application for benefits is received by the Plan within 18 months after the player ceases to be an Active Player.

23. Inactive A benefits are payable if the player does not qualify for Active Football

or Active Nonfootball benefits, and his application for benefits is received within 15 years after the end of the player's last credited season.[1]

24. An "Active Player" is a player who is under contract with an NFL team.

25. Each benefit classification provides a minimum benefit amount.

26. At the time that Mr. Miller was awarded total and permanent disability benefits, the minimum benefit for Active Football was $22,084 per month; for Active Nonfootball, $13,750 per month; and for Inactive A, $11,250 per month.

## Mr. Miller's Disability Benefit Claim

27. The Plan received Mr. Miller's application on June 13, 2019, within 18 months after his retirement.

28. The Plan scheduled Mr. Miller for medical evaluations by a neurologist, a psychiatrist, a neuropsychologist, and an orthopedist.

29. Matthew Norman, M.D., a "Plan neutral" psychiatrist, submitted a report concluding that from a psychiatric standpoint, Mr. Miller is unable to work due to Generalized Anxiety Disorder and severe Major Depressive Disorder. Dr. Norman also noted Attention Deficit/Hyperactivity Disorder, predominantly inattentive presentation, which he opined contributes to, but is not causative of, Mr. Miller's ongoing impairments.

30. On July 26, 2019, the Plan's Disability Initial Claims Committee wrote to Mr. Miller, informing him that based on its review of his medical records and Dr. Norman's report, it had concluded that he met the Plan's requirements for total and permanent disability benefits.

---

[1] A "credited season" means, in pertinent part, a plan year in which a player is an Active Player on the dates of three or more games. A "plan year" is a twelve-month period from April 1 to March 31.

31.     The Committee also notified Mr. Miller that it had determined that he did not qualify for Active Football or Active Nonfootball benefits because his "psychiatric impairments did not arise while" he was an Active Player. Instead, the Committee concluded that Mr. Miller's "psychiatric impairments" arose *before* he played in the NFL. The Committee stated as follows:

> In fact, the medical evidence in your records reflect[s] a history of psychiatric impairment prior to your NFL career, which was self-reported and confirmed by several physicians. For example, you were diagnosed with panic disorder, mood disorder, post-traumatic stress disorder, and attention deficit disorder in 2008 by psychologist Timothy Zeddies, Ph.D., while you were still in college at the University of Texas. Furthermore, in your recent workers' compensation evaluation with Dr. Ramon Pino, you report[ed] a history of anxiety and depression in college that was treated with psychiatric medication, and your records reflect that you continued to be treated with psychiatric medication throughout your NFL career. For these reasons, the Committee determined that your psychiatric impairments did not arise while you were an Active Player and therefore awarded you T&P benefits in the Inactive A category.

32.     In classifying Mr. Miller's disability, the Committee failed to apply the Plan terms, which state that a player qualifies for Active Football or Active Nonfootball benefits if his "disability arises . . . while he is an Active Player." Thus, the Committee rewrote the Plan when it concluded that Mr. Miller was not entitled to Active Football or Active Nonfootball benefits because he had suffered from psychiatric issues in college: the Plan requires that the *disability* arise while the player is an Active Player, not that his *medical condition first appear* while he is an Active Player. If Mr. Miller's *disability* had arisen while he was in college, his NFL career would never have begun, much less lasted for nearly nine seasons.

33.     Prior to 2017, Mr. Miller's depression and anxiety did not interfere with his functionality. He was a successful NFL player. Mr. Miller's disability first arose while he was an Active Player in 2017.

34. In January 2020, Mr. Miller appealed the decision denying his claim to the Board.

35. In March 2020, the Plan scheduled Mr. Miller for another medical evaluation by a psychiatrist, Dr. Epstein, whom Plan staff described as a "doctor who has traditionally handled reclass psych cases."

36. The Board's sole question to Dr. Epstein reflected its rewriting of the Plan. Instead of asking when Mr. Miller's psychiatric *disability* first arose, the Board asked Dr. Epstein, "Did Mr. Miller's totally and permanently disabling psychiatric *conditions first arise* while he was an Active Player?" (Emphasis added.)

37. Dr. Epstein reviewed Mr. Miller's medical records and conducted a video interview in November 2020. Answering the question erroneously put to him, Dr. Epstein concluded,

> Mr. Miller was determined to have clinically significant depression and anxiety approximately one year before starting his NFL career. It also appears that he received medications for these problems in college and possibly as early as high school. Based on review of the records provided and my personal evaluation of Mr. Miller, to a reasonable degree of medical certainty I believe that his *conditions first arose* prior [to] the beginning of his NFL career.

(Emphasis added.)

38. Dr. Epstein further noted that his diagnostic impression was that Mr. Miller suffered from "[m]ajor depressive disorder, recurrent, severe with anxiety," but indicated that a diagnosis of depressive disorder due to head trauma should be ruled out.

39. By letter dated November 23, 2020, the Board denied Mr. Miller's appeal based on Dr. Epstein's evaluation. In its denial letter, the Board acknowledged that a player qualifies for Active Football or Active Nonfootball benefits if his "disability(ies) arises . . . while he is an Active Player," but continued to contend that Mr. Miller had been "disabled" since before his

NFL career began.

40. Because the Board improperly rewrote the Plan to conclude that Mr. Miller became disabled before his NFL career began, and was therefore ineligible for Active Football benefits, it ignored the evidence that Mr. Miller's severe major depressive disorder is due to concussions that he suffered as an NFL player.

## FIRST CLAIM FOR RELIEF

### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]

41. Plaintiff incorporates Paragraphs 1 through 40 as though fully set forth herein.

42. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

43. Mr. Miller successfully played eight seasons with the NFL before becoming disabled during his ninth season. Therefore, his disability arose while he was an Active Player.

44. Mr. Miller's disability is caused by or relates to the repeated head injuries that he sustained during NFL activities and/or is caused by injuries that qualify him for total and permanent disability benefits.

## SECOND CLAIM FOR RELIEF

### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]
*In the Alternative to the First Claim for Relief*

45. Plaintiff incorporates Paragraphs 1 through 40 as though fully set forth herein.

46. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

47. Mr. Miller successfully played eight seasons with the NFL before becoming totally disabled during his ninth season. Therefore, his disability arose while he was an Active Player, so he is entitled to Active Nonfootball benefits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

As to the First Claim for Relief

A. Declare that Plaintiff is entitled to long-term disability benefits in the Active Football classification from April 1, 2019, forward;

B. Order the Plan to pay Active Football benefits to Plaintiff from April 1, 2019, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein, less amounts paid for Inactive A benefits;

C. Order the Plan to pay future Active Football benefits to Plaintiff from the date judgment is entered herein until Plaintiff is no longer totally and permanently disabled or dies.

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

E. Provide such other relief as the Court deems equitable and just.

As to the Second Claim for Relief

A. Declare that Plaintiff is entitled to long-term disability benefits in the Active Nonfootball classification from April 1, 2019, forward;

B. Order the Plan to pay Active Nonfootball disability benefits to Plaintiff from

April 1, 2019, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein, less amounts paid for Inactive A benefits;

C. Order the Plan to pay future Active Nonfootball benefits to Plaintiff from the date judgment is entered herein until Plaintiff is no longer totally and permanently disabled or dies.

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

//

E. Provide such other relief as the Court deems equitable and just.

Respectfully submitted,

Dated: June 8, 2022                    RENAKER HASSELMAN SCOTT LLP By:

*(signature)*

Kirsten G. Scott
Attorneys for Plaintiff

RENAKER HASSELMAN SCOTT LLP
Kirsten G. Scott, Maryland Bar No. 22345
Teresa S. Renaker, *pro hac vice application to be filed*
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Tel.: (415) 653-1733
Fax: (415) 727-5079
kirsten@renakerhasselman.com
teresa@renakerhasselman.com