# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **ROY MILLER III,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Case No.: 1:22-cv-01403-ELH** |
| | ) |
| **NFL PLAYER DISABILITY AND NEUROCOGNITIVE BENEFIT PLAN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN

(currently known as the "NFL Player Disability & Survivor Benefit Plan") and Defendant

DISABILITY BOARD, by and through their counsel of record, hereby answer Plaintiff's

Complaint (Dkt. 1), paragraph by paragraph, as follows.[1]


### JURISDICTION

1.    Plaintiff Roy Miller III brings this action for monetary and equitable relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  This Court has subject matter jurisdiction over Mr. Miller's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**ANSWER:**  Paragraph 1 contains conclusions of law that do not require a

response.  To the extent a response is required, Defendants admit that Plaintiff's cause

of action arises under section 502(a)(1)(B) of the Employee Retirement Income Security

---

[1] For ease of reference, this Answer includes Plaintiff's allegations and the headings used in the Complaint.

Act of 1974, 29 U.S.C. § 1132(a)(1)(B).  Defendants also admit that this Court has

jurisdiction over Plaintiff's claim(s).  Defendants deny that Plaintiff is entitled to

equitable or monetary relief, or to any relief whatsoever.

VENUE

2.      Venue lies in the District of Maryland pursuant to ERISA § 502(e)(2), 29
U.S.C. § 1132(e)(2), because the Defendant NFL Player Disability & Neurocognitive
Benefit Plan ("Plan") is administered in part in this District, the breaches alleged took
place in this District, and the Plan may be found in this District.

**ANSWER:**   Paragraph 2 contains conclusions of law that do not require a

response.  To the extent a response is required, Defendants admit that venue before this

Court is proper.

PARTIES

3.      At all relevant times, Mr. Miller has been a participant, as defined by
ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Mr. Miller resides in Jacksonville,
Florida.

**ANSWER:**   Admitted.

4.      At all relevant times, the Defendant Plan has been an employee welfare
benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), established and
maintained for the benefit of the employees of member teams of the National Football
League ("NFL").  The Plan is named herein as a necessary party for the relief requested.

**ANSWER:**   Defendants admit that the NFL Player Disability & Neurocognitive

Benefit Plan ("Plan") is an employee welfare benefit plan within the meaning of section

3(1) of ERISA, 29 U.S.C. § 1002(1).  Defendants admit that the Plan is a Taft-Hartley,

multiemployer plan that was established and is maintained pursuant to collective

bargaining agreements between the NFL Management Council (representing NFL

employers) and the NFL Players Association (representing NFL players) for the benefit

of former professional football players and their beneficiaries.  The remaining allegations in paragraph 4 are conclusions of law that do not require a response.

5.     Defendant Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Board") is the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  The Board is the named fiduciary of the Plan within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2), charged with fiduciary duties including the duty to administer the Plan solely in the interest of the Plan's participants and strictly in accordance with the Plan's written terms. ERISA § 404(a), 29 U.S.C. § 1104(a).

**ANSWER:**  Defendants admit that the Disability Board ("Board") is the Plan Administrator within the meaning of section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).  Defendants admit that the Board is the named fiduciary of the Plan.  The remaining allegations in paragraph 5 are conclusions of law that do not require a response.  To the extent a response is required, Defendants admit that the Board's duties include, without limitation, the duty to administer the Plan in accordance with its terms, and the duty to act in the interest of the Plan's participants.  To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

<u>FACTS</u>

— Mr. Miller's NFL Career —

6.     Mr. Miller is a former professional football player in the NFL.  After graduating from the University of Texas, he played defensive tackle for the Tampa Bay Buccaneers, Jacksonville Jaguars, and Kansas City Chiefs during a nine-season career from 2009 through 2017.

**ANSWER:**  Admitted.

7.     Defensive tackle is a physically punishing position that requires the player to endure high-impact contact with offensive players on every play.

**ANSWER:**   Denied.  To the extent Plaintiff relies on documents and

information contained in the administrative record to support his claim(s), Defendants

deny Plaintiff's characterization of those materials, which speak for themselves.  To the

extent Plaintiff relies on documents and information outside the administrative record

to support his claim(s), Defendants reserve the right to move the Court to strike those

materials and any allegations based on them.

8.     In his first season with the Buccaneers, Mr. Miller played in 15 out of 16 games, starting in one game and finishing the season with 33 tackles and two sacks, meaning that he tackled the opposing quarterback before the quarterback could throw a pass.  In 2010, he started in all 16 games and had 48 tackles and one sack.  In 2011, despite injuries, he played every one of the 16 regular season games, started in three, and had 36 tackles. In 2012, he played in 15 games and had 24 tackles.

**ANSWER:**   Defendants lack sufficient information to admit or deny the

allegations in paragraph 8.  To the extent Plaintiff relies on documents and information

contained in the administrative record to support his claim(s), Defendants deny

Plaintiff's characterization of those materials, which speak for themselves.  To the extent

Plaintiff relies on documents and information outside the administrative record to

support his claim(s), Defendants reserve the right to move the Court to strike those

materials and any allegations based on them.

9.     Between signing with the Jaguars in 2013 and an injury in October 2016, Mr. Miller started in 50 out of a possible 54 games.  During this time, he was credited with 106 tackles with five sacks.

**ANSWER:**   Defendants lack sufficient information to admit or deny the

allegations in paragraph 9.  To the extent Plaintiff relies on documents and information

contained in the administrative record to support his claim(s), Defendants deny

Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

10. While playing football in the NFL, Mr. Miller suffered numerous orthopedic and neurological injuries, including multiple concussions and countless subconcussive impacts, multiple herniated discs, and damage to his shoulders, hips, knees, and ankles. He underwent multiple surgeries on his shoulders, left knee, and right Achilles tendon.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations in paragraph 10. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

11. In October 2016, Mr. Miller tore his right Achilles tendon during the Jaguars' sixth game of the season. Following surgeries in October and November 2016, Mr. Miller was placed on the injured reserve list for the remainder of the season.

**ANSWER:** Defendants admit that Plaintiff was on the injured reserve list from October 26, 2016 through February 6, 2017. Defendants lack sufficient information to admit or deny the remaining allegations in paragraph 11. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the

administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

12.     In 2017, Mr. Miller signed with the Chiefs and played in seven games. However, his psychiatric and cognitive issues stemming from his multiple football injuries during the preceding eight seasons became severe.

**ANSWER:**  Defendants admit that Plaintiff signed with the Chiefs in 2017, and that he played in seven games.  Defendants deny each and every remaining allegation in paragraph 12.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

13.     In November 2017 and again in June 2018, Mr. Miller attended an intensive outpatient program for psychiatric issues.  At the time of his admission in November 2017, a psychiatric evaluation noted that he exhibited symptoms "secondary to significant encephalopathy secondary to CTE" or chronic traumatic encephalopathy, a chronic degenerative brain disease found in athletes who have a history of repetitive brain trauma.

**ANSWER:**  Defendants lack sufficient information to admit or deny the allegations in paragraph 13.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

14.     In July 2018, due to his continuing and severe health conditions, Mr. Miller announced his retirement from the NFL.

**ANSWER:**  Defendants admit that Plaintiff officially retired from the NFL in 2018.  Answering further, Defendants state that, upon information and belief, Plaintiff retired after he was released by the Chiefs and then suspended by the NFL Commissioner following criminal, domestic-abuse-related charges.  Defendants deny each and every remaining allegation in paragraph 14.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

15.     In May 2019, an independent psychiatric evaluation concluded that "Traumatic Brain Injury - Post concussion syndrome" appeared to be "the major contributing cause of the psychiatric diagnosis (anxiety, panic attacks, anger, depression, insomnia) and the need for psychiatric treatment." The evaluation also connected Mr. Miller's psychiatric symptoms to his chronic pain from his football injuries, noting that Mr. Miller's prognosis was "poor & guarded" because "[t]he worst psychological outcome is seen in patients who are in chronic pain."

**ANSWER:**  Defendants lack sufficient information to admit or deny the allegations in paragraph 15.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

16.     Since his retirement, Mr. Miller has undergone two spinal surgeries and is now preparing for a spinal fusion in an effort to alleviate his chronic pain.  Mr. Miller also suffers from chronic migraine headaches.

**ANSWER:**  Defendants lack sufficient information to admit or deny the

allegations in paragraph 16.  To the extent Plaintiff relies on documents and information

contained in the administrative record to support his claim(s), Defendants deny

Plaintiff's characterization of those materials, which speak for themselves.  To the extent

Plaintiff relies on documents and information outside the administrative record to

support his claim(s), Defendants reserve the right to move the Court to strike those

materials and any allegations based on them.

— Pertinent Plan Terms —

17.     The Plan provides "total and permanent" disability benefits to NFL players under the following circumstances:

> (a)     At least one "Plan neutral physician" selected by the Board or by the Plan's Disability Initial Claims Committee finds that (i) the player is substantially unable to engage in any occupation or employment for remuneration or profit, and (ii) this condition is permanent; and

> (b)     The Disability Initial Claims Committee or the Board agrees with the Plan neutral physician's finding of permanent disability.

**ANSWER:**  Denied.  To the extent Plaintiff relies on the terms of the Plan to

support his claim(s), Defendants deny Plaintiff's characterization of those terms, which

speak for themselves.

18.     It is undisputed that Mr. Miller meets these criteria for total and permanent disability.

**ANSWER:**  Defendant admits that Plaintiff meets these criteria for total and permanent disability benefits for the reasons explained in the various decision letters Plaintiff received.

19.     Total and permanent disability benefits under the Plan are divided into four classifications, of which three are relevant here: Active Football, Active Nonfootball, and Inactive A.

**ANSWER:**  Defendants admit that the Plan provides four different classifications of total and permanent disability benefits, including Active Football, Active Nonfootball, and Inactive A.  Defendants deny each and every remaining allegation in paragraph 19.  To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

20.     Active Football benefits are payable if (a) the player's disability arises out of NFL football activities while he is an Active Player, and causes him to be totally and permanently disabled; and (b) his application for benefits is received by the Plan within 18 months after the player ceases to be an Active Player.

**ANSWER:**  To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

21.     If the player's total and permanent disability is due to a "psychological/psychiatric disorder," the Active Football classification additionally requires that the disorder be either (a) caused by or related to a head injury or injuries sustained by the player arising out of NFL football activities, such as repetitive concussions; or (b) caused by or related to the use of a substance prescribed by a licensed physician for an injury or injuries or illness sustained by the player and arising

out of NFL football activities; or (c) caused by an injury or injuries that qualifies the player for the Active Football classification.

**ANSWER:** To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

22.     Active Nonfootball benefits are payable if (a) the player's disability does not arise out of NFL football activities but does arise while he is an Active Player; and (b) his application for benefits is received by the Plan within 18 months after the player ceases to be an Active Player.

**ANSWER:** To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

23.     Inactive A benefits are payable if the player does not qualify for Active Football or Active Nonfootball benefits, and his application for benefits is received within 15 years after the end of the player's last credited season.  [footnote 1 omitted]

**ANSWER:** To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

24.     An "Active Player" is a player who is under contract with an NFL team.

**ANSWER:** To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.

25.     Each benefit classification provides a minimum benefit amount.

**ANSWER:** Admitted.

26.  At the time that Mr. Miller was awarded total and permanent disability benefits, the minimum benefit for Active Football was $22,084 per month; for Active Nonfootball, $13,750 per month; and for Inactive A, $11,250 per month.

**ANSWER:**  Admitted.

— Mr. Miller's Disability Benefit Claim —

27.  The Plan received Mr. Miller's application on June 13, 2019, within 18 months after his retirement.

**ANSWER:**  Defendants admit that the Plan received Plaintiff's application for

total and permanent disability benefits on June 13, 2019.  Defendants admit that this

date was within 18 months from the end of Plaintiff's last "Credited Season."

Defendants deny each and every remaining allegation in paragraph 27.

28.  The Plan scheduled Mr. Miller for medical evaluations by a neurologist, a psychiatrist, a neuropsychologist, and an orthopedist.

**ANSWER:**  Admitted.

29.  Matthew Norman, M.D., a "Plan neutral" psychiatrist, submitted a report concluding that from a psychiatric standpoint, Mr. Miller is unable to work due to Generalized Anxiety Disorder and severe Major Depressive Disorder.  Dr. Norman also noted Attention Deficit/Hyperactivity Disorder, predominantly inattentive presentation, which he opined contributes to, but is not causative of, Mr. Miller's ongoing impairments.

**ANSWER:**  Defendants admit that Dr. Norman, Plan Neutral Physician,

evaluated Plaintiff and issued a written report describing his condition.  To the extent

Plaintiff relies on documents and information contained in the administrative record to

support his claim(s), Defendants deny Plaintiff's characterization of those materials,

which speak for themselves.  To the extent Plaintiff relies on documents and

information outside the administrative record to support his claim(s), Defendants

reserve the right to move the Court to strike those materials and any allegations based on them.

30. On July 26, 2019, the Plan's Disability Initial Claims Committee wrote to Mr. Miller, informing him that based on its review of his medical records and Dr. Norman's report, it had concluded that he met the Plan's requirements for total and permanent disability benefits.

**ANSWER:** Defendants admit that, by letter dated July 26, 2019, the Plan's Disability Initial Claims Committee ("Committee") informed Plaintiff that he met the Plan's criteria for an award of Inactive A total and permanent disability benefits, among other things. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

31. The Committee also notified Mr. Miller that it had determined that he did not qualify for Active Football or Active Nonfootball benefits because his "psychiatric impairments did not arise while" he was an Active Player. Instead, the Committee concluded that Mr. Miller's "psychiatric impairments" arose before he played in the NFL. The Committee stated as follows:

> In fact, the medical evidence in your records reflect[s] a history of psychiatric impairment prior to your NFL career, which was self-reported and confirmed by several physicians. For example, you were diagnosed with panic disorder, mood disorder, post-traumatic stress disorder, and attention deficit disorder in 2008 by psychologist Timothy Zeddies, Ph.D., while you were still in college at the University of Texas. Furthermore, in your recent workers' compensation evaluation with Dr. Ramon Pino, you report[ed] a history of anxiety and depression in college that was treated with psychiatric medication, and your records reflect that you continued to be treated with psychiatric

> medication throughout your NFL career.  For these reasons,
> the Committee determined that your psychiatric
> impairments did not arise while you were an Active Player
> and therefore awarded you T&P benefits in the Inactive A
> category.

**ANSWER:**  Defendants admit that the Committee's decision letter explained, in part, that the Committee determined that Plaintiff's disabling impairments did not arise while he was an Active Player.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

32.    In classifying Mr. Miller's disability, the Committee failed to apply the Plan terms, which state that a player qualifies for Active Football or Active Nonfootball benefits if his "disability arises . . . while he is an Active Player."  Thus, the Committee rewrote the Plan when it concluded that Mr. Miller was not entitled to Active Football or Active Nonfootball benefits because he had suffered from psychiatric issues in college: the Plan requires that the disability arise while the player is an Active Player, not that his medical condition first appear while he is an Active Player.  If Mr. Miller's disability had arisen while he was in college, his NFL career would never have begun, much less lasted for nearly nine seasons.

**ANSWER:**  Denied.  To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to

support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

33.     Prior to 2017, Mr. Miller's depression and anxiety did not interfere with his functionality.  He was a successful NFL player.  Mr. Miller's disability first arose while he was an Active Player in 2017.

**ANSWER:**   Denied.  To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

34.     In January 2020, Mr. Miller appealed the decision denying his claim to the Board.

**ANSWER:**   Admitted.

35.     In March 2020, the Plan scheduled Mr. Miller for another medical evaluation by a psychiatrist, Dr. Epstein, whom Plan staff described as a "doctor who has traditionally handled reclass psych cases."

**ANSWER:**   Defendants admit that in February 2020 the Board voted unanimously to refer Plaintiff's appeal to a Medical Advisory Physician ("MAP") psychiatrist, Dr. Steven Epstein, pursuant to Plan Section 9.3(a), for a final and binding determination as to whether Plaintiff satisfied the Plan's requirements for Active Nonfootball or Active Football benefits.  Answering further, Defendants state that Plan Section 9.3(a) provides, in pertinent part, that "if three or more voting members of the Disability Board conclude that a medical issue exists as to whether a Player qualifies for

a benefit under this Plan ... such members may submit such issue to a Medical Advisory Physician for a final and binding determination regarding such medical issues ... the Medical Advisory Physician will have full and absolute discretion, authority and power to decide such medical issues." Defendants admit that MAP psychiatrist Dr. Epstein personally evaluated Plaintiff in November 2020. Defendants deny each and every remaining allegation in paragraph 35. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

36. The Board's sole question to Dr. Epstein reflected its rewriting of the Plan. Instead of asking when Mr. Miller's psychiatric disability first arose, the Board asked Dr. Epstein, "Did Mr. Miller's totally and permanently disabling psychiatric conditions first arise while he was an Active Player?" (Emphasis added.)

**ANSWER:** Defendants admit that Dr. Epstein was asked to opine on whether Plaintiff's totally and permanently disabling psychiatric conditions first arose while he was an Active Player. Defendants deny each and every remaining allegation in paragraph 36. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

37.     Dr. Epstein reviewed Mr. Miller's medical records and conducted a video interview in November 2020.  Answering the question erroneously put to him, Dr. Epstein concluded,

> Mr. Miller was determined to have clinically significant depression and anxiety approximately one year before starting his NFL career.  It also appears that he received medications for these problems in college and possibly as early as high school.  Based on review of the records provided and my personal evaluation of Mr. Miller, to a reasonable degree of medical certainty I believe that his conditions first arose prior [to] the beginning of his NFL career.

(Emphasis added.)

**ANSWER:**   Defendants admit that Dr. Epstein personally evaluated Plaintiff in November 2020 and provided a written report opining on Plaintiff's condition.  Defendants deny each and every remaining allegation in paragraph 37.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves.  To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

38.     Dr. Epstein further noted that his diagnostic impression was that Mr. Miller suffered from "[m]ajor depressive disorder, recurrent, severe with anxiety," but indicated that a diagnosis of depressive disorder due to head trauma should be ruled out.

**ANSWER:**   Defendants admit that Dr. Epstein personally evaluated Plaintiff and provided a written report opining on Plaintiff's condition.  Defendants deny each and every remaining allegation in paragraph 38.  To the extent Plaintiff relies on documents and information contained in the administrative record to support his

claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

39. By letter dated November 23, 2020, the Board denied Mr. Miller's appeal based on Dr. Epstein's evaluation. In its denial letter, the Board acknowledged that a player qualifies for Active Football or Active Nonfootball benefits if his "disability(ies) arises . . . while he is an Active Player," but continued to contend that Mr. Miller had been "disabled" since before his NFL career began.

**ANSWER:** Defendants admit that the Board denied Plaintiff's appeal by letter dated November 23, 2020. Defendants deny each and every remaining allegation in paragraph 39. To the extent Plaintiff relies on the terms of the Plan to support his claim(s), Defendants deny Plaintiff's characterization of those terms, which speak for themselves. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record to support his claim(s), Defendants reserve the right to move the Court to strike those materials and any allegations based on them.

40. Because the Board improperly rewrote the Plan to conclude that Mr. Miller became disabled before his NFL career began, and was therefore ineligible for Active Football benefits, it ignored the evidence that Mr. Miller's severe major depressive disorder is due to concussions that he suffered as an NFL player.

**ANSWER:** Denied. To the extent Plaintiff relies on documents and information contained in the administrative record to support his claim(s), Defendants deny Plaintiff's characterization of those materials, which speak for themselves. To the extent Plaintiff relies on documents and information outside the administrative record

to support his claim(s), Defendants reserve the right to move the Court to strike those

materials and any allegations based on them.

<u>FIRST CLAIM FOR RELIEF</u>

[Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]

41.    Plaintiff incorporates Paragraphs 1 through 40 as though fully set forth
herein.

**ANSWER:**   Defendants similarly incorporate their responses to paragraphs 1

through 40.

42.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant
to bring a civil action to recover benefits due to him under the terms of a plan, to enforce
his rights under the terms of a plan, and/or to clarify his rights to future benefits under
the terms of a plan.

**ANSWER:**   Paragraph 42 contains conclusions of law that require no response.

To the extent a response is required, Defendants admit that section 502(a)(1)(B), 29

U.S.C. § 1132(a)(1)(B), permits a plan participant to bring suit to recover benefits.

43.    Mr. Miller successfully played eight seasons with the NFL before becoming
disabled during his ninth season.  Therefore, his disability arose while he was an Active
Player.

**ANSWER:**   Denied.

44.    Mr. Miller's disability is caused by or relates to the repeated head injuries
that he sustained during NFL activities and/or is caused by injuries that qualify him for
total and permanent disability benefits.

**ANSWER:**   Denied.

<u>SECOND CLAIM FOR RELIEF</u>

[Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]
In the Alternative to the First Claim for Relief

45.     Plaintiff incorporates Paragraphs 1 through 40 as though fully set forth herein.

**ANSWER:** Defendants similarly incorporate their responses to paragraphs 1 through 40.

46.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

**ANSWER:** Paragraph 46 contains conclusions of law that require no response. To the extent a response is required, Defendants admit that section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring suit to recover benefits.

47.     Mr. Miller successfully played eight seasons with the NFL before becoming totally disabled during his ninth season.  Therefore, his disability arose while he was an Active Player, so he is entitled to Active Nonfootball benefits.

**ANSWER:** Denied.

In addition to the responses set forth in paragraphs 1 through 47 of this Answer, Defendants deny each and every allegation of fact and conclusion of law in the Complaint not otherwise specifically admitted in this Answer, and Defendants deny that Plaintiff is entitled to the relief demanded in the Complaint or to any relief whatsoever.

AFFIRMATIVE DEFENSES

1)     The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2)     The Board's decision denying Plaintiff's request for a higher classification of benefits was consistent with the terms of the Plan, supported by substantial evidence,

and otherwise reasonable.  Therefore, the decision was neither arbitrary and capricious nor an abuse of discretion, and it should be upheld.

3)      The Complaint should be dismissed, in whole or in part, due to Plaintiff's failure to exhaust administrative remedies.


PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants pray that judgment be entered in their favor and against Plaintiff, that the Court award Defendants all costs and fees incurred in defending against Plaintiff's claims, and that the Court grant Defendants such other and further relief as the Court deems just and proper.

Dated:  August 22, 2022                         Respectfully submitted,
                                                GROOM LAW GROUP, CHARTERED

                                        By:     _____
                                                Michael L. Junk, Bar No. 19551
                                                Edward J. Meehan, Bar No. 04775
                                                1701 Pennsylvania Avenue NW
                                                Washington, DC 20006
                                                P: (202) 857-0620
                                                F: (202) 659-4503
                                                mjunk@groom.com
                                                emeehan@groom.com

                                                COUNSEL FOR DEFENDANTS

                                                NFL PLAYER DISABILITY &
                                                NEUROCOGNITIVE BENEFIT PLAN,
                                                and DISABILITY BOARD

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed with the Clerk of Court via

CM/ECF, which will automatically send a notice of electronic filing to counsel of record

for all parties.

Dated:  August 22, 2022

GROOM LAW GROUP, CHARTERED

By: _____

Michael L. Junk, Bar No. 19551
1701 Pennsylvania Avenue NW
Washington, DC 20006
P: (202) 857-0620
F: (202) 659-4503
mjunk@groom.com

COUNSEL FOR DEFENDANTS

NFL PLAYER DISABILITY &
NEUROCOGNITIVE BENEFIT PLAN,
and DISABILITY BOARD